2001 UT App 4

**STATE of Utah, Plaintiff and Appellee,**

v.

**Blaine HORROCKS, Defendant and Appellant.**

**No. 990411–CA.**

Court of Appeals of Utah.

Jan. 5, 2001.

Shelden R. Carter, Harris & Carter, Provo, for Appellant.

Jan Graham, Attorney General, and Joanne C. Slotnik, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and DAVIS and THORNE, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant appeals the trial court's denial of his motion to dismiss, arguing that the Double Jeopardy Clause and the Single Criminal Episode Act bar the State's reprosecution of charges against him. Defendant claims the Payson Justice Court previously received his pleas, sentenced him, and issued a final order, barring any further State action against him for charges arising out of the July 21, 1996 auto accident. We affirm.

## BACKGROUND

¶ 2 On July 21, 1996, defendant was involved in a traffic accident in Utah County. At the time of the accident, police issued a traffic citation for only the misdemeanor offenses of no insurance, driving on a suspend-

ed license, and failure to yield. Because the citation was for class B or C misdemeanors, the local justice court had jurisdiction to hear these charges. *See* Utah Code Ann. § 78–5–104(1) (Supp.2000). The citation directed defendant to appear for court no earlier than five days, but no later than fourteen days after it was issued. Accordingly, defendant appeared at the Payson Justice Court on July 29, 1996—eight days after receiving the citation.

¶ 3 When defendant appeared in court, the court clerk was unable to locate the court's copy of the misdemeanor traffic citation. In order to accommodate defendant, the clerk made a copy of the citation defendant brought with him and entered it into the computer. A copy of the citation was given to the judge who used it to conduct the hearing. Defendant then pleaded no contest to the driving on a suspended license charge and guilty to the failure to yield and no insurance charges. After defendant pleaded to the charges, the court orally sentenced defendant with fines and jail time. The court suspended part of the fine and all of the jail time upon completion of court ordered probation.

¶ 4 After the court accepted defendant's pleas and orally imposed sentence, the court apparently realized a mistake had been made when it found its original copy of the misdemeanor citation. The original citation had "voided" written on it and a new citation was attached to it. As the clerk later testified, none of the information about the plea and sentence was entered into the court's computer system and no final judgment was ever created or signed.

¶ 5 About a week after the July 29th hearing, the Payson City attorney moved the justice court to dismiss the case without prejudice. Despite defendant's objection, the justice court granted the motion to dismiss. Because defendant wished to appeal the grant of the motion to dismiss, he asked the justice court to produce a computer entry record of the July 29th hearing. Defendant then appealed the justice court's grant of the

motion to dismiss to the Fourth District Court.

¶ 6 The district court held a de novo hearing addressing defendant's claim. Judge John C. Backlund issued his Findings of Fact and ·Order on March 17, 1997, dismissing defendant's appeal. Judge Backlund signed another order dismissing the appeal on May 8, 1997.[1] Defendant appealed Judge Backlund's orders to this court, and we dismissed the appeal for lack of jurisdiction.

¶ 7 On January 23, 1997, the county attorney filed an information charging defendant with six criminal counts arising from the July 21, 1996 auto accident. Defendant filed a motion to dismiss, arguing that this action could not proceed because the State was barred under both the Single Criminal Episode Act and the Double Jeopardy Clause. The district court, Judge Anthony Schofield presiding, held a hearing on defendant's motion to dismiss. During this hearing, the State produced as the sole witness, Marley Lazenby, the Payson Justice Court clerk. Ms. Lazenby testified about the events that took place during the July 29th hearing and subsequent computer document generated on September 11th. The clerk testified that under normal circumstances she would enter the information from the hearing into the computer in order to produce a final judgment. This final judgment would reflect the charges, plea, and sentence, and would subsequently be signed by the judge and mailed to the parties. On cross-examination, the clerk testified that the court always prepares these final judgments and the judge always signs them. After Ms. Lazenby's testimony, defense counsel requested additional time to present rebuttal evidence to show that the justice court routinely fails to produce, sign, and mail final judgments to the parties. The court allowed defense counsel an additional ten days to submit further evidence to the court. The State subsequently brought a motion to strike the evidentiary hearing based partially on defendant's failure to provide the court with any rebuttal evidence. The district court granted the State's motion,

---

1. The State prepared the first order, dated March 17, and defendant prepared the second order dated May 8. There is no indication in the record of a reason for signing both orders.

and noted that defendant had failed to provide any further evidence.

¶ 8 Judge Schofield later issued an order concluding that the current proceeding did not constitute double jeopardy. Specifically, Judge Schofield determined that Judge Backlund had already held that the justice court had not entered a final judgment and therefore no jeopardy had attached.

¶ 9 Defendant then entered conditional guilty pleas to use or possession of psilocybin and use or possession of marijuana. Defendant now appeals the district court's denial of his motion to dismiss.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 Because we are limited to reviewing Judge Schofield's order, we address only defendant's claim that this action constitutes double jeopardy.[2] Thus, the issue before us is whether double jeopardy precludes the reprosecution of defendant in this action. A trial court's decision to grant or deny a motion to dismiss presents a question of law, which we review for correctness. *See State v. Amoroso,* 1999 UT App 060, ¶ 6, 975 P.2d 505, *cert. denied,* 994 P.2d 1271 (Utah 1999).

## ANALYSIS

■ ¶ 11 To the extent that defendant seeks to reverse the justice court's dismissal of the misdemeanor charges, we lack jurisdiction to consider that argument. As we previously ruled when defendant sought to appeal Judge Backlund's decision, section 78–5–120 governs appeals from a justice court, providing: "Any person not satisfied with a judgment rendered in a justice court ... is entitled to a trial de novo in the district court.... The judgment after trial de novo may not be appealed unless the court rules on the constitutionality of a statute or ordinance." Utah Code Ann. § 78–5–120 (Supp. 2000). Defendant therefore exhausted his right to appeal the justice court's dismissal of

the charges when he appealed to Judge Backlund. *See Dean v. Henriod,* 1999 UT App 050, ¶ 9, 975 P.2d 946 (holding the right of appeal in criminal matters is satisfied by right to de novo trial in district court); *City of Monticello v. Christensen,* 769 P.2d 853, 854 (Utah Ct.App.1989) (per curiam) (holding appeal of district court de novo review of justice court judgment is not allowed unless it involves the constitutionality of a statute or ordinance), *aff'd,* 788 P.2d 513, 519 (Utah 1990).

¶ 12 Although we do not address whether the justice court erred in dismissing the charges, we can examine Judge Schofield's ruling that this case does not constitute double jeopardy because there was no final order and therefore jeopardy did not attach to the prior proceeding in the justice court. In his order, Judge Schofield stated that Judge Backlund "has previously addressed the issue of double jeopardy," and "[t]he court declines to review Judge Backlund's ruling on the issue of double jeopardy." Our review of Judge Backlund's orders, however, indicates that Judge Backlund never addressed nor even mentioned the issue of whether jeopardy had attached. Instead, Judge Backlund merely found that the justice court had never entered a final signed order, and thus the charges could be dismissed.[3]

■ ¶ 13 Consequently, it is clear that Judge Backlund never issued any ruling concerning defendant's double jeopardy claim, and it is likely that jeopardy was not even raised as an issue in the appeal to Judge Backlund. Because Judge Schofield relied on Judge Backlund's legal conclusion, both district court orders focused on whether the justice court issued a final signed order. Judge Schofield was not required by the doctrine of res judicata or other legal principles to rule in conformity with Judge Backlund on the issue of when and if jeopardy attached, since Judge Backlund did not ad-

---

**2.** Because we conclude that double jeopardy does not bar the prosecution of this case, we do not address defendant's claim under the Single Criminal Episode Act.

**3.** The first of Judge Backlund's orders cited, without comment, *State v. Wright,* 904 P.2d 1101,

1102 (Utah Ct.App.1995) where we stated: "It is the law of this state, as announced in *State v. Curry,* 814 P.2d 1150 (Utah Ct.App.1991) (per curiam), that a sentence is not entered until it has been reduced to writing and signed by the court."

dress the issue. As a parallel consequence, we are able to review Judge Schofield's order, which held, for the first time, that double jeopardy did not preclude the charges against defendant in this case.

¶ 14 The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const.amend. V. A double jeopardy claim presents two questions. "The first is whether jeopardy in fact 'attached' when the trial court accepted [defendant's] first plea. The second is whether, if jeopardy did attach, a reprosecution of the case is permitted." *State v. Moss*, 921 P.2d 1021, 1024 (Utah Ct.App.1996). The Utah Supreme Court has observed that it is well settled "that jeopardy attaches when a court accepts a guilty plea and that the entry of the plea, rather than the actual imposition of the sentence, is the critical moment for determining jeopardy." *State v. Kay*, 717 P.2d 1294, 1302 (Utah 1986) (internal citations omitted); *see also Moss*, 921 P.2d at 1024. Thus, under the facts of this case, the trial court's ruling is at odds with the accepted rule that, notwithstanding whether the justice court entered a final signed order, jeopardy attached when the justice court accepted defendant's guilty pleas. This case highlights what appear to be seemingly conflicting rules in Utah's appellate decisions.

¶ 15 The First Circuit discussed the differing approaches to this issue. *See United States v. Cruz*, 709 F.2d 111, 114 (1st Cir. 1983). In *Cruz*, the court noted that some courts have determined "that jeopardy should attach to a guilty plea only upon the imposition of sentence and formal pronouncement or entry of judgment. This would give maximum flexibility to the court while still fixing a clear point of finality and repose." *Id.* (citing *United States v. Combs*, 634 F.2d 1295, 1298 (10th Cir.1980)); *see also Curry*, 814 P.2d at 1151 (court can impose higher sentence than it originally orally imposed where court does not reduce first oral sentence to final written and signed order); *State v. Wright*, 904 P.2d 1101, 1102–03 (Utah Ct.App.1995) (oral sentence that is not reduced to final written and signed order can

be modified by the court and does not violate double jeopardy). In *Cruz*, however, the First Circuit rejected the requirement that a final signed order is necessary for jeopardy to attach and merely required the acceptance of a guilty plea by the trial court. *See Cruz*, 709 F.2d at 114. The *Cruz* court, however, went on to craft a narrow exception allowing a court to abrogate an accepted plea, accompanied by detachment of jeopardy. The court

> analogize[d] judicial abortion of a previously accepted guilty plea and plea bargain to judicial declaration of a mistrial after jeopardy has attached—i.e., to hold that jeopardy attaches upon acceptance of the guilty plea, but to allow the district court to rescind acceptance at any time before sentencing and judgment upon a showing of 'manifest necessity,' the standard for declaring a mistrial over the defendant's objection.

*Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)).

¶ 16 In *Kay*, the Utah Supreme Court adopted the rule announced in *Cruz*, that jeopardy attaches once a plea is accepted by the court, but the plea can be set aside upon a showing of "manifest necessity." *See id.*, 717 P.2d at 1303; *see also Moss*, 921 P.2d at 1025–26. By accepting the approach adopted by the First Circuit, the supreme court implicitly rejected the rule that a final signed order is required before jeopardy attaches. *See Cruz*, 709 F.2d at 114 (rejecting requirement of "imposition of sentence and formal pronouncement or entry of judgment").

¶ 17 In *Moss*, the trial court accepted defendant's plea in abeyance to attempted sexual abuse of a child. *See id.*, 921 P.2d at 1022. Later, the court was informed that defendant's plea violated a statutory prohibition against acceptance of a plea in abeyance in cases involving victims under the age of fourteen. *See id.* at 1023. Upon learning that defendant's plea was illegal, the trial court set aside defendant's plea and set the matter for a preliminary hearing. *See id.* On appeal, defendant argued that the trial court's acceptance of his guilty plea was a final adjudication which barred the subse-

quent trial on the same charges. *See id.* at 1024.

¶ 18 Applying *Kay*, this court concluded that jeopardy attached when the trial court accepted defendant's plea in abeyance. *See id.* at 1024–25. Specifically, this court declined to find Rule 11 of the Utah Rules of Criminal Procedure applicable because it only allows the denial of a plea prior to its acceptance by the court. *See id.* at 1024. Instead, this court determined that *Kay* controlled the issue and that jeopardy attached when the trial court accepted and approved defendant's plea. *See id.* at 1024–25.

¶ 19 In this case, however, the trial court relied on *Curry* and *Wright,* holding that since the justice court had not reduced the oral sentence to a final written and signed order the case could be dismissed and new charges could be filed without offending double jeopardy. We believe, however, that *Curry* and *Wright* do not resolve defendant's claim that the justice court's acceptance of his guilty plea and oral imposition of a sentence placed him in jeopardy and that the newly filed charges constituted double jeopardy.

¶ 20 For example, in *Curry*, a short per curiam opinion, the trial court accepted defendant's guilty plea and orally sentenced defendant to concurrent sentences. *See id.,* 814 P.2d at 1150. Defendant then moved the court to set aside the sentence and order a ninety-day evaluation, which the court granted. *See id.* In granting defendant's motion, the court's minute entry stated that it was not signing the sentence previously entered and that sentencing was continued until after the ninety-day evaluation. *See id.* After the ninety-day evaluation, the court sentenced defendant to the same prison term, but ordered them served consecutively. *See id.* Upholding the trial court's order sentencing defendant to consecutive prison terms, this court held that "a judgment and sentence is not final and appealable where the court orally finds defendant guilty and sentences him but fails to enter written findings of fact and a judgment." *Id.* at 1151. *Curry,* however, did not address double jeopardy at all, and thus it cannot stand for the proposition

that jeopardy attached only after the court entered a final signed order. *See id.*

¶ 21 Similarly, in *Wright,* defendant pleaded guilty, and the court ordered a presentence report from Adult Probation and Parole (AP & P) and set a sentencing date. *See id.,* 904 P.2d at 1102. The court had not received the presentence report by the date set for sentencing, and it reordered the report and continued sentencing. *See id.* At the next sentencing hearing, the court still had not received the presentence report from AP & P. *See id.* At defense counsel's request, the court orally sentenced defendant, but suspended the prison term pending defendant's successful completion of probation. *See id.* The court, however, expressly declined to sign the sentencing papers until it had a chance to review the presentence report. *See id.* After reviewing the presentence report, the court sentenced defendant to the same prison term, but declined to suspend the term with probation. *See id.* Defendant appealed the sentence, arguing the imposition of a more severe sentence constituted double jeopardy. *See id.*

¶ 22 Addressing defendant's claim, this court extended the ruling in *Curry* to a double jeopardy claim, and determined that defendant could not legally have suffered double jeopardy until the court entered a final signed order. *See id.* at 1102–03. Specifically, this court stated that defendant received only one sentence for his conviction, and thus was not "placed twice in jeopardy for the same offense." *Id.* at 1103.

¶ 23 On the surface, the rule in *Wright,* requiring a final signed order before jeopardy attaches, appears to conflict with the rule in *Kay, Moss,* and *Cruz,* requiring only acceptance of the plea before jeopardy attaches. Neither *Wright* nor *Curry,* however, discuss *Kay* as controlling law because, unlike *Kay, Moss,* and *Cruz,* neither the court nor the State in either case sought to set aside defendant's plea. Rather, both decisions really address the ability of the court to change sentencing after orally announcing it, but prior to entering it in a final signed sentencing order. In both *Wright* and *Curry,* the court had issued statements expressly declining to enter a final judgment until it

had the opportunity to review a presentence report. *See Curry,* 814 P.2d at 1150; *Wright,* 904 P.2d at 1102. Thus, the rule adopted in *Curry* and *Wright* is proper in cases where the court has expressly declined to impose a final sentence until it has had the opportunity to review sentencing information. In that context, the requirement of a final signed order signals that the court has issued its final decision on sentencing and jeopardy attaches at that point to preclude further modification of the sentence.

¶ 24 On the other hand, *Kay, Moss,* and *Cruz* are cases where the court accepted defendant's guilty plea and later attempted to set aside the plea in order to allow the State to retry defendant on the same charges. In these cases, jeopardy attached once the court accepted defendants' pleas and orally sentenced them. Thus, *Kay, Moss,* and *Cruz* are distinguishable from and consistent with *Wright* and *Curry* for two reasons: (1) *Kay, Moss,* and *Cruz* address the situation where the court is asked to declare a misplea in order to allow defendant to be retried; and (2) those cases do not address a court's power to modify an oral sentencing decision. Furthermore, this court cannot disregard or overturn decisions of the supreme court, and therefore *Kay* is controlling precedent.[4]

■ ¶ 25 The legal principles established by the foregoing analysis are as follows: Jeopardy attaches when a plea is accepted by a trial court. A trial court, however, may (1) change an oral sentencing decision when it has specifically reserved that option pending receipt of further information relevant to sentencing and the sentencing decision is not binding on the court until a final written order is entered; or (2) declare a misplea in limited circumstances where there is "manifest necessity" to do so and double jeopardy will not then preclude reprosecution.

■ ¶ 26 In applying these principles to this case, we accept, as we must, the ruling of Judge Backlund that a final order was not entered by the justice court. Jeopardy, how- ever, attached when the justice court accepted defendant's pleas. By then dismissing the case, the justice court essentially declared a misplea. The State then refiled the same charges and additional felony charges against defendant in district court.

¶ 27 "[C]oncluding jeopardy attaches, begins, rather than ends our inquiry as to whether double jeopardy bars defendant's retrial." *Moss,* 921 P.2d at 1025. Under *Kay* and *Moss,* if manifest necessity exists, a court may vacate an accepted guilty plea without violating a defendant's right against double jeopardy. *See Kay,* 717 P.2d at 1305; *Moss,* 921 P.2d at 1025. The justice court could only rescind its acceptance of the guilty plea and dismiss the misdemeanor charges "based on a showing of 'manifest necessity' and 'no undue prejudice to the defendant.' " *Moss,* 921 P.2d at 1025 (quoting *Kay,* 717 P.2d at 1305). Because Judge Backlund and Judge Schofield did not reach defendant's double jeopardy claim, neither judge's order addresses whether there was manifest necessity justifying withdrawal of the justice court's acceptance of defendant's guilty plea. Whether manifest necessity exists is a question of law. *See Kay,* 717 P.2d at 1305; *Moss,* 921 P.2d at 1026.

¶ 28 In *Kay,* the court addressed several circumstances which would justify rescinding acceptance of a plea. *See Kay,* 717 P.2d at 1305. These include instances when accepting the plea is the result of an "obvious reversible error," *id.,* or when the terms of the plea agreement are later found to be illegal. *Moss,* 921 P.2d at 1024, 1028. In addition, the supreme court recognized: "Declaration of a misplea also seems reasonable in situations where some fraud or deception by one party leads to the acceptance of the plea agreement by the other party or the court." *Kay,* 717 P.2d at 1305. Manifest necessity, however, does not exist when a court "simply change[s] its mind on the basis of information in the presentence report, at least where that information revealed less than fraud on the court." *Cruz,* 709 F.2d at 114–15.

4. We note, as did the *Moss* opinion, *see Moss,* 921 P.2d at 1025 n. 8, that the continued viability of *Cruz* in the First Circuit is questionable. *See*

*United States v. Santiago Soto,* 825 F.2d 616, 619–20 (1st Cir.1987).

¶ 29 When defendant appealed the justice court's dismissal to the district court, Judge Backlund issued two signed final orders. Both the State and defendant prepared orders which the judge ultimately signed. In the order prepared by defense counsel, the following finding of fact was made:

> [T]he defendant came into the Payson City Justice Court with the citation that contained the Class B Misdemeanor of Driving on Suspension, Failure to Yield and no insurance. The citation for DUI was written on a separate citation and other charges were sent to the County Attorney for determination and review of the charges. The court did not have the original citation, however, the defendant gave the court a copy of his misdemeanor citation. *Defendant misled the court into thinking that those were all of the charges.* The court allowed him to make a plea and issued an oral sentence.

(Emphasis added.) Furthermore, the justice court clerk testified that she produced the computer entry of the proceedings at defendant's request, sometime in early September. Defendant attempted to claim this entry, which was never signed by the judge and never intended to be the actual final signed court order, was the final court order. Based on Judge Backlund's finding of fact and the clerk's testimony, the evidence suggests that defendant consistently engaged in tactics to mislead the court and avoid punishment for the felony charges. Thus, defendant's acts of intentionally deceiving the court fall into the circumstances contemplated by *Kay* as sufficient to justify manifest necessity.

¶ 30 Finally, in order to allow a misplea, it must be shown that defendant will not suffer undue prejudice. *See Kay,* 717 P.2d at 1305. In *Kay,* defendant confessed to committing multiple murders and gave specific details of the crime. *See id.* at 1306. Defendant argued that allowing a misplea would provide the State with a "road map" in a subsequent trial. *See id.* Nevertheless, the court held that since his confession would be inadmissible in the subsequent trial defendant would not suffer undue prejudice. *See id.* at 1307.

¶ 31 In *Moss,* we stated that a misplea is allowed unless defendant "has taken some affirmative action which would materially and substantially affect the outcome of a subsequent retrial. Where the defendant is simply placed in the same position as he or she was prior to the guilty plea, there is no undue prejudice to the defendant." *Id.,* 921 P.2d at 1027.

¶ 32 Given the facts of this case, which are much less egregious than in *Kay,* defendant suffered no undue prejudice by allowing the dismissal of the misdemeanor charges and the refiling of new charges. Defendant has not shown that he relied to his detriment on the plea entered in the justice court. Nor did defendant confess to any crimes or provide details which compromised his ability to defend himself in the subsequent action. Rather, defendant was placed in essentially the same position as he was prior to misplea.

## CONCLUSION

¶ 33 We hold that jeopardy attached when the justice court accepted defendant's guilty pleas. To the extent that the district court determined that double jeopardy would not be implicated by dismissing these charges and allowing the State to refile charges, it was in error. Nevertheless, manifest necessity exists to allow a misplea in this case. Thus, defendant could properly be reprosecuted on the original three misdemeanor charges as well as the additional charges contained in the subsequent information.

¶ 34 Accordingly, we affirm the trial court's denial of defendant's motion to dismiss.

¶ 35 WE CONCUR: JAMES Z. DAVIS, Judge, and WILLIAM A. THORNE, Jr., Judge.