2002 UT App 49

**STATE of Utah, Plaintiff and Appellee,**

v.

**Tyrese Sharod SMITH, Defendant and Appellant.**

**No. 971332–CA.**

Court of Appeals of Utah.

Feb. 22, 2002.

Stephanie Ames, Gustin, Christian, Skordas & Caston, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christine Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

OPINION

ORME, Judge:

¶ 1 Appellant Tyrese Smith was convicted of a murder perpetrated in early 1996 while he was in prison, the jury having accepted the contention that he orchestrated the murder during a series of telephone conversations with fellow gang members. Proof of this contention was greatly aided by the fact that these telephone conversations were recorded by prison authorities. The trial court determined Smith acted "in concert" with several others, and imposed a "group crime" or "gang" sentence enhancement pursuant to Utah Code Ann. § 76–3–203.1 (1995). The jury found a firearm was used in the commission of the crime, and the trial court additionally imposed the sentence enhancement authorized by Utah Code Ann. § 76–3–203 (1995).

¶ 2 On appeal, Smith claims he received ineffective legal assistance from his trial counsel, in violation of his Sixth Amendment rights. His several contentions in this regard are without merit and do not require extensive discussion.[1] He also challenges imposition of the group crime sentence enhancement. This challenge merits fuller discussion.

¶ 3 Smith argues he was improperly subjected to Utah Code Ann. § 76–3–203.1 (1995), which provides for a mandatory minimum sentence when the elements of the group crime sentence enhancement are proved. At the time of Smith's trial, subsection (5)(c) of the section provided: "The sentencing judge rather than the jury shall decide whether to impose the enhanced penalty under this section." Utah Code Ann. § 76–3–203.1(5)(c) (1995). Thus, in this case, the trial court, in accordance with the statute, itself made the necessary findings supporting imposition of the group crime sentence enhancement.

¶ 4 While Smith's appeal was pending, the Utah Supreme Court, in *State v. Lopes*, 1999 UT 24, 980 P.2d 191, held that subsection (5)(c) of section 76–3–203.1 was unconstitutional. *See id.* at ¶ 17. The Court based this holding on its conclusion that sentencing enhancements "create[ ] a specific new crime or a crime of a higher degree[, and a]s such, each of the elements [of the enhancement]

must be proved beyond a reasonable doubt." *Id.* at ¶ 15. Significantly, the Utah Supreme Court explicitly did not distinguish between sentencing enhancements that provide for a mandatory minimum term and sentencing enhancements that prescribe a maximum term beyond that otherwise allowed. Instead, the Court held:

> When the legislature passed the gang enhancement provision, [Utah Code Ann. § 76–3–203.1 (1995), which imposes a mandatory minimum term,] it acted just as it did when it passed the firearm enhancement provision[, Utah Code Ann. § 76–3–203 (Supp.1998), which imposes an additional, consecutive term]: it mandated imposition of an enhancement only upon proof of elements over and above those required for the crime of lesser consequence.... As such, each of the elements must be proved beyond a reasonable doubt.

*Id.* Thus, under *Lopes*, imposition of either type of sentence enhancement requires that the relevant facts be found by the trier of fact, beyond a reasonable doubt.[2] *See id.* Therefore, Smith rightly argues that application of *Lopes* to this case would render the trial court's imposition of the gang enhancement, without a finding of the relevant elements by the jury upon proof beyond a reasonable doubt, in error.[3]

1. While this appeal was pending, we temporarily remanded for an evidentiary hearing in accordance with Rule 23B of the Utah Rules of Appellate Procedure. Evidence was taken, and the trial court made detailed findings, not effectively challenged by Smith, concerning several potential witnesses and additional tape recordings of Smith's conversations. The findings more than adequately support the trial court's conclusions that counsel's performance in these regards was not deficient and that, in any event, no prejudice resulted.

   Smith's additional ineffective assistance claims concern matters outside the scope of the Rule 23B remand. One, concerning the alleged failure to meaningfully seek to limit use of the taped conversations, is simply not borne out by the record. Another, counsel's alleged character assassination of his own client during closing argument, was clearly an effort to recognize the jury's legitimate concern about Smith's gang involvement, and taking this tack was well within the scope of counsel's strategic discretion. As the State aptly observes, "Counsel's closing argument evinced not disloyalty, but reality." Final-

ly, because the crime Smith solicited was actually committed, it would not have been proper to instruct the jury on solicitation as a lesser included offense, *see* Utah Code Ann. § 76–4–203(5) (1995), and thus counsel was on firm ground in not requesting such an instruction.

2. Subsequent to *Lopes*, the Legislature amended section 76–3–203.1 to do away with the previous subsection (5)(c) and changed subsection (1)(a) to require that the enhancement be imposed only *"if the trier of fact finds beyond a reasonable doubt* that the person acted in concert with two or more persons." Utah Code Ann. § 76–3–203.1(1)(a) (Supp.2001) (emphasis added).

3. Because *Lopes* was decided while this case was on appeal, it applies here. *See State v. Belgard*, 615 P.2d 1274, 1275–76 (Utah 1980) (holding that a defendant may claim the benefit of appellate decisions issued while the defendant's case is pending final judgment on appeal). *Accord State v. Kohl*, 2000 UT 35, ¶¶ 28, 30, 999 P.2d 7 (holding *"Lopes* applies to this case" even though

¶ 5 The State counters that a decision of the United States Supreme Court, *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), "effectively overrules *Lopes.*" In *Apprendi,* the United States Supreme Court distinguished between "mandatory minimum" sentencing enhancements, which do not "alter[ ] the maximum penalty for the crime ... [and] operate[ ] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it," and "prescribed statutory maximum" sentencing enhancements, which "increas[e] punishment beyond the maximum statutory range." *Id.* at 486, 488, 490, 120 S.Ct. at 2360-63. The *Apprendi* Court held that the United States Constitution requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362-63. However, the *Apprendi* Court expressly concluded that for mandatory minimum enhancements it is sufficient that the factual findings necessary to trigger the enhancement be made by a trial judge on a preponderance of the evidence. *See id.* at 485-86, 120 S.Ct. at 2360-61. Clearly then, if we were to follow the analysis of *Apprendi* our decision would be different than if we follow *Lopes.*

¶ 6 Because "this court cannot disregard or overturn decisions of the [Utah] [S]upreme [C]ourt," *State v. Horrocks,* 2001 UT App 4,¶ 24, 17 P.3d 1145, we are unable to embrace the approach of the United States Supreme Court in *Apprendi* and rather must follow the Utah Supreme Court's ruling in *Lopes.* We also note that although the rationale of *Lopes* is inconsistent with that of *Apprendi,* it does not necessarily follow that *Apprendi* effectively overrules *Lopes* because "[a] state may construe its own constitution more narrowly than the federal constitution even though the provisions involved may be similar." *State v. Brooks,* 638 P.2d 537, 539 (Utah 1981). Significantly, *Lopes* was expressly based on the Utah Supreme Court's interpretation of Article I, section 12, of the Utah Constitution rather than on provisions

of the United States Constitution. *See* 1999 UT 24 at ¶ 17, 980 P.2d 191.

¶ 7 Under *Lopes,* the enhancement provision of section 76-3-203.1 may only be imposed pursuant to relevant findings made by the trier of fact based upon proof beyond a reasonable doubt. *See ·id.* at ¶¶ 13-17. Therefore, in this case, the trial court erred by imposing the enhancement in the manner it did. We conclude, however, that the error was harmless. *See generally, State v. Veteto,* 2000 UT 62,¶¶ 10-12, 6 P.3d 1133; *State v. Kohl,* 2000 UT 35,¶¶ 28-31, 999 P.2d 7.

¶ 8 At the time Smith committed the crime at issue in this case, section 76-3-203.1(1)(a) provided: "A person who commits any offense listed in Subsection (4) in concert with two or more persons is subject to an enhanced penalty for the offense as provided below." Utah Code Ann. § 76-3-203.1(1)(a) (1995). In *Lopes,* the Utah Supreme Court clarified that in order for the group crime enhancement to apply, section 76-3-203.1(1)(a) requires a finding, based on proof beyond a reasonable doubt, "that all three actors ... possessed a mental state sufficient to commit the same underlying offense and ... directly committed the underlying offense or solicited, requested, commanded, encouraged, or intentionally aided one of the other two actors to engage in conduct constituting the underlying offense." 1999 UT 24 at ¶ 8, 980 P.2d 191.

¶ 9 Although the factual elements necessary to trigger the enhancement were not separately submitted to the jury in this case, we conclude, as to each, that (1) it was undisputedly established at trial, and (2) the jury could not have returned the verdicts it did on the other questions submitted to it without having also "found" the particular element necessary for imposition of the group crime enhancement.

¶ 10 Three of Smith's cohorts—Miguel Flores, Collin Carter, and Cameron Lopes, of *State v. Lopes* fame—testified at Smith's trial that they intentionally murdered the victim, and their judgments and convictions for murder were entered into evidence at Smith's trial. Thus, the participation of the other

"defendant was tried before our decision in    *Lopes* ").

alleged actors and their mental states were not in dispute. Furthermore, because Smith was in prison at the time of the murder, the jury's return of a verdict of guilty to murder and a special verdict on the use of a firearm, necessarily presupposes conclusions by the jury, beyond a reasonable doubt, that Smith had the requisite mental state and "solicited, requested, commanded, encouraged, or intentionally aided" at least one of the other alleged actors to commit the murder.[4] Therefore, the error by the trial court in failing to specifically submit the factual questions relevant to the group crime sentence enhancement to the jury was harmless beyond a reasonable doubt.[5]

¶ 11 Affirmed.

¶ 12 WE CONCUR: RUSSELL W. BENCH, Judge, and JAMES Z. DAVIS, Judge.

---

4. These undisputed facts, in particular the fact that Smith's cohorts pled guilty to the identical crime for which he was convicted, allay the attenuation concerns expressed in *State v. Helmick*, 2000 UT 70, ¶¶ 15–16, 9 P.3d 164.

5. At oral argument, Smith's counsel suggested that had the question been submitted to the jury, it may have found that Smith acted in concert with only one other individual rather than with two or more. As shown, the undisputed facts and jury verdicts establish that at least two others participated in the crime and that Smith acted in concert with at least one of them. That is sufficient. *See Lopes*, 1999 UT 24 at ¶ 8, 980 P.2d 191 (holding that to impose the group crime enhancement the jury need only find that the defendant "solicited, requested, commanded, encouraged, or intentionally aided *one* of the other two actors") (emphasis added).