2004 UT App 321

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert J. BERNERT, Defendant and Appellant.**

**No. 20030329–CA.**

Court of Appeals of Utah.

Sept. 16, 2004.

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS, and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Robert J. Bernert (Defendant) appeals from his conditional plea of guilty to one count of driving under the influence of alcohol (DUI), a third degree felony. Defendant argues that the trial court erred in denying his motion for dismissal on double jeopardy grounds. We reverse.

## BACKGROUND

¶ 2 Defendant was initially charged by Ogden City (the City) with a class B misdemeanor DUI. At Defendant's arraignment, he indicated that he intended to plead guilty. Judge W. Brent West conducted a plea colloquy pursuant to rule 11 of the Utah Rules of Criminal Procedure and determined that Defendant understood the charges against him and that his plea was knowing and voluntary. Judge West then asked Defendant, "How do you plead?" Defendant responded, "I ple[a]d guilty, [y]our Honor." The court responded by asking, "Is there a breath or blood test?" The City replied that it did not have any test results, and Judge West asked, "Recommendation, Counsel?" At that point, the City, for the first time, informed the court that Defendant had a prior criminal history, including alcohol-related offenses.

¶ 3 Judge West reviewed Defendant's Pretrial Service Program Own Recognizance Interview Sheet and stated, "So I'm kind of surprised that this isn't a class A or a felony but I show an extensive record." The City then asked the court not to accept Defendant's guilty plea so the City could transfer the case to county prosecutors, who could charge Defendant with a felony DUI. Judge West answered, "[Defendant has] already entered his plea. I don't know if the [C]ity can do that but I'm going to continue it over one day and think about it." The matter was brought the next day before Judge Parley R. Baldwin, and, without comment, he granted the City's request to dismiss the misdemeanor charge. Thereafter, the State charged Defendant with a third degree felony DUI,

and Defendant filed a motion to dismiss the charge based upon double jeopardy.

¶ 4 Defendant's motion to dismiss was heard by Judge Michael D. Lyon, who sent the case back to Judge West to "make his own judgment whether he accepted the plea o[r] not." At the proceeding before Judge West, Defendant pointed out that the court does not regularly make an express acceptance of a guilty plea, rather the court normally asks for a blood or breath test and any recommendations after taking the plea and in preparation for imposing sentence. Judge West reviewed the tape of Defendant's misdemeanor plea hearing and made findings consistent with those he had made initially. Although Judge West acknowledged that maybe he ought to reconsider the manner in which he accepts pleas and make his acceptance explicit, he nonetheless concluded that he did not accept Defendant's misdemeanor guilty plea. Based upon Judge West's determination that he had not accepted Defendant's plea, Judge Lyon, at a third hearing on Defendant's motion to dismiss, ruled that jeopardy had not attached and denied Defendant's motion to dismiss.

¶ 5 On January 23, 2003, at a pretrial hearing before Judge Lyon, Defendant entered a conditional plea of guilty to the felony charge, specifically reserving the right to appeal the double jeopardy issue. Defendant was later sentenced to zero to five years at the Utah State Prison. Defendant appeals the trial court's denial of his motion to dismiss.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The sole issue on appeal is whether the trial court erred in denying Defendant's motion to dismiss on the grounds of double jeopardy. "A trial court's decision to grant or deny a motion to dismiss presents a question of law, which we review for correctness." *State v. Horrocks*, 2001 UT App 4, ¶ 10, 17 P.3d 1145.

## ANALYSIS

¶ 7 Defendant argues that he could not properly be convicted of a felony DUI after he had previously pleaded guilty to a misdemeanor DUI arising out of the same criminal episode. Defendant contends that jeopardy attached when he pleaded guilty to

the misdemeanor and the court accepted that plea. The State, however, argues that the trial court did not err in denying Defendant's motion to dismiss the felony charge because the trial court never accepted Defendant's misdemeanor plea; therefore, jeopardy never attached.

¶ 8 The Utah Supreme Court has adopted the rule "that jeopardy attaches once a plea is accepted by the court." [1] *Hor-rocks*, 2001 UT App 4 at ¶ 16, 17 P.3d 1145. "[I]t is well settled 'that jeopardy attaches when a court accepts a guilty plea and that the entry of the plea, rather than the actual imposition of the sentence, is the critical moment for determining jeopardy.' " *Id.* at ¶ 14 (quoting *State v. Kay*, 717 P.2d 1294, 1302 (Utah 1986)).[2]

¶ 9 While Utah courts have not specifically described the method by which a trial court

---

1. Although jeopardy attaches once a plea is accepted by the court, "the plea can be set aside upon a showing of 'manifest necessity.' " *State v. Horrocks*, 2001 UT App 4, ¶ 16, 17 P.3d 1145. Circumstances justifying recision of a plea include "instances when accepting the plea is the result of an 'obvious reversible error,' ... the terms of the plea agreement are later found to be illegal," or " 'where some fraud or deception by one party leads to the acceptance of the plea agreement by the other party or the court.' " *Id.* at ¶ 28 (citations omitted). "Manifest necessity, however, does not exist when a court 'simply change[s] its mind on the basis of information in the presentence report, at least where that information revealed less than fraud on the court.' " *Id.* (alteration in original) (citations omitted). Additionally, a court may not allow a misplea if the defendant will suffer undue prejudice. *See id.* at ¶ 30.

   [T]o establish undue prejudice[,] a defendant must show that he or she has taken some affirmative action which would materially and substantially affect the outcome of a subsequent retrial. Where the defendant is simply placed in the same position as he or she was prior to the guilty plea, there is no undue prejudice to the defendant.

   *State v. Moss*, 921 P.2d 1021, 1026–27 (Utah Ct.App.1996).

   Assuming Defendant would not suffer undue prejudice if the court declared a misplea, it does not appear from the record that a misplea would be warranted under the circumstances. Although Defendant raises the misplea issue in his brief, the State concedes that the trial court did not render its ruling on this basis. Additionally, on appeal, the State does not argue in the alternative that even if the trial court in fact accepted the Defendant's misdemeanor plea, the plea should be set aside on other grounds. Therefore, we need not further address the misplea issue.

2. Citing *State v. Ostler*, 2001 UT 68, 31 P.3d 528, the State argues that a court's acceptance of a guilty plea, and thus attachment of jeopardy, does not take place until "entry of the plea," which, according to *Ostler*, occurs when the court enters judgment and sentences the defendant. *See id.* at ¶ 11 & n. 3. The State's reliance on *Ostler*, however, is misplaced.

   To begin, *Ostler* is not a case that involved double jeopardy. In *Ostler*, the Utah Supreme Court was asked to determine when the thirty-day limitation on the filing of a motion to withdraw a guilty plea began to run under section 77–13–6 of the Utah Code. *See* Utah Code Ann. § 77–13–6(2)(b) (1999); *Ostler*, 2001 UT 68 at ¶ 6, 31 P.3d 528. At the time, the statute provided that a request to withdraw a plea of guilty or no contest had to be made within thirty days after "the entry of the plea." Utah Code Ann. § 77–13–6(2)(b) (1999). The court complicated the matter by holding that the phrase "entry of the plea," which was unambiguous on its face, could be interpreted in one of two ways. *See Ostler*, 2001 UT 68 at ¶ 8, 31 P.3d 528. According to the court, "[t]hat language could reasonably be interpreted to refer either to the time the plea is *accepted* by the court and entered in the record, or to the time of *entry of judgment of conviction* on the plea, which generally occurs at sentencing." *Id.* (emphasis added).

   For the purpose of determining the statutory meaning of "entry of the plea," the court made a distinction between acceptance and sentencing. *See id.* The court's interpretation of "entry of the plea," therefore, could not consistently be applied to jeopardy cases, which hinge on when a court *accepts* a plea. Additionally, in jeopardy cases, interpreting "entry of the plea" to mean entry of judgment or conviction is entirely inconsistent with *State v. Kay*, 717 P.2d 1294 (Utah 1986), in which the Utah Supreme Court recognized "that jeopardy attaches when a court accepts a guilty plea, and that the entry of the plea, *rather than* the actual imposition of the sentence, is the critical moment for determining jeopardy." *Id.* at 1302 (emphasis added) (citations omitted). Moreover, in *Horrocks*, this court concluded that when the Utah Supreme Court adopted the rule that jeopardy attaches once a plea is accepted, "the supreme court implicitly rejected the rule that a final signed order is required before jeopardy attaches." 2001 UT App 4 at ¶ 16, 17 P.3d 1145. Therefore, when the supreme court declared that the phrase "entry of the plea" applies to the sentencing phase in withdrawal cases, it could not have intended that its decision also apply to double jeopardy cases.

   The Utah legislature, apparently in response to the supreme court's decision in *Ostler*, amended section 77–13–6. *See* Utah Code Ann. § 77–13–6 (2003). The legislature deleted the phrase "entry

may effectively accept a plea, case law from other jurisdictions demonstrates that a court's acceptance need not be explicit. *See, e.g., Reyes ·v. Kelly,* 204 So.2d 534, 538 (Fla. Dist.Ct.App.1967) (explaining that acceptance "may be either express or necessarily implied. Thus, when a [c]ourt upon a plea of guilty proceeds to simply impose sentence, the 'acceptance' of such plea by the [c]ourt is automatically implied."). Section 76–3–201(1)(a)(ii) of the Utah Code, dealing with sentencing, defines "[c]onviction" to include a "plea of guilty." Utah Code Ann. § 76–3–201(1)(a)(ii) (2003). Furthermore, the language of rule 22 of the Utah Rules of Criminal Procedure, which also governs sentencing, suggests that the time when a plea is entered is also the moment ·when acceptance occurs. Rule 22 provides that "[u]pon the entry of a plea or verdict of guilty or plea of no contest, the court shall set a time for imposing sentence." Utah R.Crim. P. 22(a). A court could not move to sentencing unless the court had first accepted the defendant's plea.

¶ 10 After reviewing the record in this case, we conclude that the trial judge accepted Defendant's guilty plea to a misdemeanor DUI charge. After conducting a plea colloquy, as required under rule 11 of the Utah Rules of Criminal Procedure, and finding that Defendant's misdemeanor plea was knowing and voluntary, the trial judge asked Defendant, "How do you plead?" Defendant pleaded guilty, and the court, apparently making inquiries about sentencing, then asked the State for a breath or blood test. When the State responded that it did not have either test, the judge then asked the State for a recommendation. It was only at that point that both the State and the judge made reference to previously available information regarding Defendant's criminal history—information contained in the Pretrial Service Program Own Recognizance Inter-

view Sheet. The State, upon closer review of Defendant's record, realized that Defendant should have been charged with a felony because of his extensive criminal record. The State then moved the court not to accept Defendant's guilty plea.

¶ 11 In a subsequent hearing to address the issue of whether the trial judge had accepted Defendant's plea to the misdemeanor, the judge who took the plea said that he subjectively believed that he had not accepted the plea, yet at the same time he acknowledged that maybe he ought to reconsider the manner in which he accepts pleas because he does not normally explicitly state when he has accepted a plea. Instead, as Defendant pointed out, the judge normally asks for a blood or breath test and any recommendations after taking the plea and in preparation for imposing sentence.

¶ 12 Because we conclude that the trial court accepted Defendant's guilty plea to the misdemeanor DUI, we hold that jeopardy attached. Therefore, the trial court erred by denying Defendant's motion to dismiss the felony DUI conviction on double jeopardy grounds.

## CONCLUSION

¶ 13 The trial court erred by denying Defendant's motion to dismiss on double jeopardy grounds. Therefore, we reverse and remand for sentencing on the misdemeanor plea.

¶ 14 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and PAMELA T. GREENWOOD, Judge.

---

of the plea" altogether. *See ıd.* Now a request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, "shall be made by motion *before* sentence is announced," and for a plea held in abeyance, the motion to withdraw the plea "shall be made within 30 days of *pleading guilty* or no contest." *Id.* (emphasis added).

Not only is the State's application of *Ostler* inconsistent with double jeopardy cases, it is

problematic from a policy standpoint. If, as the State argues, a plea is not accepted until a court has entered a final judgment of conviction, then the obvious question remains: What is left for a defendant to withdraw? Under this interpretation of acceptance, a defendant could presumably rescind his own plea at any time before sentencing because the plea had never been accepted.